PONDER, Judge.
This is an action to recover costs of repair, lost rental, attorney’s fees, and interest under the provisions of a rental agreement. The court allowed recovery of some of the repair costs and some lost rental only. Plaintiff seeks a reversal of the trial judge’s determination that there was no written contract. Defendant-lessee has answered this appeal seeking a complete reversal.
Defendant’s employee, Layfield, opened negotiation for the rental of a dozer. Cook, defendant’s superintendent, completed negotiations and told plaintiff to deliver the dozer after agreeing to the rental rate, the minimum lease period and the condition that the dozer be used only for dirt work. Cook authorized Layfield to receive delivery. Plaintiff, however, had a written rental agreement presented to Layfield, who signed it. This document contained provisions that the lessee would be responsible for repairs, lost rental time, attorney’s fees and interest at the rate of 1% per month. When the dozer was returned its hydraulic system was inoperative, its blade cracked and gouged, its front idler arm broken and its rear fuel tank in need of repair.
Plaintiff claims the cost of repairs, $2,615.42; one month’s rental, $3,400.00; attorney’s fees at 25% and interest at 8%. The court allowed $1,790.00 for repairs, $1,125.00 for 3 days rental at the $375.00 daily rental rate and interest at 7% from date of judicial demand.
The issues presented are: (1) Was there a written contract of lease. (2) Did damage beyond the normal wear and tear occur during the lessee’s possession.
We amend and affirm.
There is in the record the written agreement signed by Layfield. Defendant denies that he had authority to sign the agreement; defendant’s manager denies even discussing such authorization with either Layfield or plaintiff. There is some testimony by the employee that he was given authority to sign the “contract”. Admittedly, he was authorized to accept the machine, but there is some evidence to support the trial judge’s finding of no express grant of authority to sign the rental agreement.
Plaintiff urges alternatively that Lay-field had implied authority. In Pailet v. Guillory, La.App., 315 So.2d 893 (3rd Cir., 1975) the Court discussed implied agency as follows:
“ * * * Like an express agency, an implied agency is an actual agency.”
Thus, to prove an implied agency between Manufacturers Enterprises, Inc. and its employee, Mr. Layfield, plaintiff must show circumstances between the alleged principal and agent, beyond the normal employment relationship. The trial court evidently found that Layfield had no grant of authority beyond receiving and signing for the machine. It is difficult to interpret that grant as encompassing the implied authority to sign a rental agreement containing provisions unknown to both Layfield and Cook. We reject that contention.
The plaintiff next contends that Layfield had apparent authority. The issue presented here is not one of apparent authority, but one of credibility. The testimony dealing with this issue is completely contradictory. The plaintiff claims the defendant *1300 told him to get Layfield to sign the written contract. The defendant testifies of a policy against signing such contracts; Cook states emphatically that he did not say or do anything that could lead plaintiff to believe that Mr. Layfield could sign anything other than the normal receipt. The trial court accepted defendant’s version. Since there are facts to support this finding, we should not overrule it without finding manifest error. Canter v. Koehring Company, 283 So.2d 716, La. (1973).
The finding of no written contract, however, does not end the matter; there was an understanding of a one-month minimum rental period at a stated rate and of a condition that the machine would not be used for anything other than dirt work; thus there was an oral lease.[1]
LSA-C.C. Article 2711 imposes a duty not to misuse the thing leased.[2] Thus, the only thing the plaintiff must show is “misconduct” on the part of the defendant-lessee.
The plaintiff relies on circumstantial evidence and expert testimony: the machine was in good condition when delivered to the jobsite, something other than dirt was actually moved with the dozer, the dozer blade was meant for dirt moving only, there was insufficient preventative maintenance to the hydraulic system, and this failure to maintain was a probable cause of such failure. One of defendant’s witnesses admitted that the crack would not have resulted from normal wear and tear of the machine. Despite some contradictions, especially between opposing experts, the evidence is sufficient to support the trial judge’s findings.
The court allowed the cost of disassembling, straightening and reassembling the dozer, but disallowed the cost of repairs to the hydraulic system and track idler. There is evidence to support the conclusion that the items allowed resulted from misuse and those disallowed resulted from normal wear and tear. We therefore will not overturn that conclusion.
The court allowed the rental rate for a week of lost time. There was evidence that three days’ time would be required to repair the machine. The rate for a week would be $1,135.00; the rate for three days would be $1,125.00. Defendant does not complain of the small added amount.
We note, however, that the court did not allow the cost of the plate repaired on the machine or the sales tax required. We will amend to allow these.
For the reasons assigned we amend the judgment to add repair costs of the plate in the amount of $25.01, and sales tax in the amount of $108.90 on the repairs to the dozer. Plaintiff is cast for all costs of these proceedings.
As amended the judgment is affirmed.
AMENDED AND AFFIRMED.

. The lower court spoke in terms of quantum meruit and no lease at all. We disagree with that conclusion.

. “Art. 2711. If the lessee makes another use of the thing than that for which it was intended, and if any loss is thereby sustained by the lessor, the latter may obtain the dissolution of the lease.
The lessee, in that case, shall be bound to pay the rent, until the thing is again leased out; and the lessee is also liable for all losses which the owner may have sustained through his misconduct.”